IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:08-CR-174-FL-1

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | |
| KENDRICUS MARQUELL WILLIAMS, | ) | ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on defendant's motion to suppress any and all statements defendant provided to law enforcement officers from the Wake County Sheriff's Office ("WCSO"), and any evidence derived therefrom, including statements provided to detectives from the Raleigh, Wake Forest, and Wilson Police Departments, following an alleged invocation of defendant's *Miranda* rights during a custodial interview on March 11, 2008. (DE #47.) The government filed a response in opposition to the motion, and United States Magistrate Judge David W. Daniel held an evidentiary hearing on December 5, 2008 to develop the record.[1] Through Memorandum and Recommendation ("M&R") filed December 24, 2008, the magistrate judge recommends that defendant's motion be denied. (DE #92.) Defendant timely objected to the M&R and the government responded. This matter is now ripe for ruling.

**BACKGROUND**

On March 11, 2008, members of the WCSO apprehended defendant in connection with the

---

[1] A transcript of the suppression hearing was received and considered by the court in its decision on this motion.

robbery of a convenience store and an ensuing high speed chase. Upon being transported to an interview room at the WCSO, defendant was advised of his right to remain silent and right to the assistance of counsel during questioning. Detective Blackwell of the WCSO then confirmed in writing that defendant understood his rights to silence and to counsel, and that defendant wished to talk to him. Defendant signed the rights waiver form at approximately 8:50 pm using the alias "Dandergo Graham." When asked by law enforcement officers whether Dandergo Graham was his true name, defendant responded that it was.

The parties dispute how many robberies defendant confessed to before allegedly invoking his right to silence and right to counsel.[2] Both parties agree, however, that at some point during the interview, Detective Hall of the Raleigh Police Department, who observed portions of the interview via a surveillance camera, overheard defendant say, "I don't think I want to say anything more until I talk to a lawyer." Detective Blackwell, who was questioning defendant at the time, testified at hearing that he did not hear defendant's alleged invocation of rights.

Defendant continued to speak following his alleged invocation, expressing a desire to see his son and providing further details regarding his involvement in various robberies throughout Raleigh and Wake Forest. On two additional occasions during the interview, at approximately 10:30 pm and 12:15 am, defendant confirmed his desire to continue to speak with detectives from the Raleigh Police Department and the Wake Forest Police Department. Defendant eventually gave law enforcement officers his real name. At the conclusion of the interview, defendant guided Detective Hall to the scene of four Raleigh robberies, confessing to additional robberies in Wilson and Bailey

---

[2] The government asserts that defendant confessed to three robberies and to the accidental shooting of a store clerk prior to the alleged invocation, while defendant contends that he confessed to one robbery and that when asked if he committed any other robberies, he shook his head "no."

2

along the way.

The next day, on March 12, 2008, defendant met with Detective Kearney of the Wilson Police Department. After advising defendant of his rights, Detective Kearney provided defendant with a *Miranda* rights waiver form, which defendant signed and initialed indicating his understanding of his rights and voluntary waiver of the same. During this interview, defendant confessed to the commission of two Wilson County robberies and signed written statements.

In all, defendant confessed to nine robberies. He was subsequently charged with (1) nine counts of Hobbs Act Robbery in violation of 18 U.S.C. § 1951; (2) nine counts of using and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A); and (3) one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924.

## DISCUSSION

This court conducts a *de novo* review of those portions of an M&R to which specific objections are made. 28 U.S.C. § 636(b)(1)(C). Defendant objects to the magistrate judge's finding that defendant's statement was not a clear assertion of his right to an attorney or to remain silent sufficient to necessitate the cessation of questioning. The one-paragraph objection filed by defendant takes no specific issue with the magistrate judge's factual findings or understanding of applicable law, but appears to simply disagree with the legal conclusions drawn by the magistrate judge.

Defendant concedes that he was advised of his right to counsel and his right to silence at the beginning of his interview with detectives at the WCSO on March 11, 2008. He also concedes that he waived his rights in writing by signing the rights waiver form. At issue, then, is whether defendant clearly invoked his rights under applicable case law by stating, "I don't think I want to say anything more until I talk to a lawyer."

3

Law enforcement officers must immediately cease questioning a suspect who has clearly asserted his right to have counsel present during custodial interrogation. Edwards v. Arizona, 451 U.S. 477 (1981). If, however, "a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." Davis v. United States, 512 U.S. 452, 459 (1994). In Davis, the Supreme Court held that the statement, "[m]aybe I should talk to a lawyer," was not an unambiguous request for counsel, and that law enforcement agents were not required to stop their questioning or ask clarifying questions. "If the statement fails to meet the requisite level of clarity, Edwards does not require that the officers stop questioning the suspect." Id.

Upon *de novo* review, the court agrees with the magistrate judge that defendant's statement was not a clear invocation of his right to an attorney under Davis and relevant Fourth Circuit case law. See Burket v. Angelone, 208 F.3d 172, 198 (4th Cir. 2000) (finding statement "I think I need a lawyer" to be ambiguous and equivocal); Mueller v. Angelone, 181 F.3d 557, 574 (4th Cir. 1999) (finding question "[d]o you think I need an attorney here" was not an unambiguous request for counsel); Johnson v. Harkleroad, 104 Fed.Appx. 858, 867 (4th Cir. 2004) (finding statement "maybe I should stop talking and get a lawyer" to be ambiguous and insufficient to invoke a right to counsel).

Nor was defendant's ambiguous statement sufficient to invoke his right to silence. Defendant's statement is similar to the statement found equivocal in Burket. See Burket, 208 F.3d at 200 (finding the statements, "I just don't think that I should say anything," and "I need somebody that I can talk to," to be ambiguous rather than an invocation of the right to silence). Furthermore, defendant continued to speak with law enforcement officers immediately following his alleged

4

invocation without prompting from Detective Blackwell, providing additional details about the robberies at issue. Twice more that evening, defendant confirmed his willingness to speak with detectives. Under these circumstances, defendant did not clearly and unambiguously invoke his right to silence in such a way as to inform officers that additional questions were not permitted. See United States v. Cardwell, 433 F.3d 378, 389 (4th Cir. 2005).

Where it appears to the court upon *de novo* review that the magistrate judge properly weighed the facts and applied the law, the court ADOPTS the recommendation of the magistrate judge, and accordingly DENIES defendant's motion to suppress.

SO ORDERED, this the 26th day of February, 2009.

LOUISE W. FLANAGAN
Chief United States District Judge